IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>[4] ELI YANIEL COUVERTIER-POLLOCK,<br><br>**Defendant.** | **CRIM. NO. 24-124-4 (RAM)** |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is the United States of America's (the "Government") *Motion for Stay of Bail Order and Request for a De Novo Bail Hearing*. (Docket No. 32). The Court granted the motion for a *de novo* bail hearing on April 9, 2024. (Docket No. 37). The motion for a stay is **DENIED** as moot, as Defendant Eli Yaniel Couvertier-Pollock ("Couvertier") was released on conditions on April 8, 2024. (Docket No. 44). Accordingly, the sole remaining issue is the Government's motion for revocation of the bail order ("*Motion*"). For the reasons set forth below, the Court **DENIES** the Government's *Motion*. The Defendant is to remain on bail subject to the conditions specified in the order of release at Docket No. 51.

### I.   BACKGROUND

On March 29, 2024, a *Complaint* was filed against Mr. Couvertier and his three co-defendants, Luis Nomar Isaac-Sanchez

("Isaac"), Joshua Enrique Bula-Cartagena ("Bula"), and Kevin Manuel Bonilla-Ramirez ("Bonilla"), for aiding and abetting the possession of a machine gun on October 31, 2023. (Docket Nos. 1 and 1-1). The four co-defendants were originally charged in the Court of First Instance, San Juan San Juan Superior Court ("Commonwealth Court"). (Docket No. 16 at 2). The Commonwealth Court dismissed the case against Mr. Bonilla on November 7, 2023, and against Messrs. Isaac, Bula, and Couvertier on March 25, 2024. Id.

The federal *Complaint* was filed shortly after, and Mr. Couvertier was arrested on April 1, 2024. (Docket Nos. 1 and 6). The Government moved for detention without bail on April 3, 2024. (Docket No. 16). The next day, a Grand Jury returned an one-count indictment charging the four co-defendants with illegal possession of a machine gun, aiding and abetting, in violation of 18 U.S.C. §§ 922(o) and 2. (Docket No. 19 at 1).

On April 8, 2024, Magistrate Judge Marcos E. López held a detention hearing and found there were conditions of release that would reasonably assure the Defendant's future appearance and the safety of the community, including an unsecured bond, home detention, and the installment of an electronic monitoring device. (Docket No. 44). That same day, the Government filed the present *Motion* seeking *de novo* review of the Magistrate Judge's detention

order. (Docket No. 32). Mr. Couvertier opposed the motion, contending that the Government had not met its burden to establish he was either a flight risk or danger to the community. (Docket No. 46 at 4). The Court held a *de novo* hearing, which took place on April 11 and 15, 2024. (Docket Nos. 55 and 66).

At the hearing, the Government called Homeland Security Investigations ("HSI") Special Agents Fabiola Colón ("SA Colón") and Michael Villanueva-Acevedo ("SA Villanueva"), as well as HSI Task Force Officer Jesus Maysonet-García ("TFO Maysonet"). Id. Further, the Government presented a bevy of exhibits. Id. The Defendant called Nilsa Rivera-Monge ("Rivera"). (Docket No. 66).

## II. FINDINGS OF FACT

The Bail Reform Act directs the judicial officer to include written findings of fact in a detention order. *See* 18 U.S.C. § 3142(i)(1). The below findings of fact are drawn only from the information and testimony presented at the *de novo* hearing conducted on April 11 and 15, 2024.[1] Furthermore, these findings of fact have been made solely for the purpose of deciding the pending *Motion*. *See* 18 U.S.C. § 3142(j) ("Nothing in this section

---

[1] Exhibits relevant to the *de novo* hearing were filed at Docket Nos. 45, 73, and 74. Later references to these exhibits shall be cited as follows: (Exhibit __). English translations of some of the exhibits were filed at Docket No. 82.

shall be construed as modifying or limiting the presumption of innocence.").

### A. Testimony of SA Colón

SA Colón testified that on October 31, 2023, at approximately 6:00 AM, agents from the Puerto Rico Police Bureau ("PRPB") were conducting surveillance on a red Jeep because a paid confidential informant had told the PRPB that the occupants of the vehicle were armed. During the surveillance, Mr. Isaac and his three co-defendants approached the red Jeep. A pistol with an extended magazine was protruding from Mr. Isaac's waistband. Once the four men entered the car, PRPB agents boxed it in using their vehicles, and Mr. Isaac fled the scene. Messrs. Bonilla, Bula, and Couvertier attempted to flee but were apprehended quickly near the vehicle. The criminal *Complaint* does not mention that Mr. Couvertier ran, but it does discuss Mr. Isaac's flight.

Later, PRPB officers found a Glock 19 pistol that had been modified with a chip to enable it to fire automatically in the center console of the red Jeep. They also discovered a second Glock 19 pistol beneath the front passenger seat. Mr. Couvertier had been sitting in the rear seat behind the driver.

Following his arrest, Mr. Couvertier consented to a search of his cell phone. Law enforcement authorities extracted several photographs and videos from Defendant's phone that depict him

handling firearms. For example, a photo dated January 8, 2023, shows Mr. Couvertier with a firearm with a loaded extended magazine tucked under his arm and magazines clutched in his hand. (Exhibit 25). A video dated January 1, 2023, shows the Defendant shooting an automatic pistol with several other persons. (Exhibits 34-2, 35, and 36). Mr. Couvertier's phone also contained a video of a person with several handguns on his lap, including one with a protruding red chip that can be used to enable a firearm to fire automatically. (Exhibit No. 28). The phone also had a video of a tan tactical bag—which Defendant is seen wearing in another photo—containing a pistol and several magazines. (Exhibit Nos. 28 and 37). Finally, there is a video of a person wearing the shoes, watch, and bracelet worn by Mr. Couvertier in other photos who is holding a firearm with a red chip and an extended magazine. (Exhibits 34-3 and 38-41).

Agents also extracted a photograph, dated February 20, 2023, and a video of Defendant in which he has two firearms tucked in his waistband and a rifle in his hand with a drum-style magazine, light brown grip, brown hand guard, and Picatinny rail. (Exhibits 16 and 34-1). On March 29, 2024, following the shooting of a PRPB officer in the Sabana Abajo Public Housing Project ("PHP"), officers discovered a duffle bag containing three weapons. (Exhibits 3 and 4). One of the weapons found in the duffle bag has

Criminal No. 24-124-4 (RAM)                                                 6

the same distinctive characteristics as the rifle from Exhibits 16 and 34-1.

SA Colón also testified that Mr. Couvertier participated in various chats, sometimes using the account name "Tata." The relevant messages, which were obtained from extractions of Defendant's and Mr. Isaac's phones, are attributed to Mr. Couvertier because they were sent from a phone number associated with him (the "Account"). The following messages are purportedly from the Defendant's Account:

1. In response to a query of whether there were firearms available for sale on about May 11, 2023, the Account replied that he had a Glock 17C for sale. (Exhibits 28 and 31).

2. On May 11, 2023, the Account and another person discussed looking for a steel, removable chip used to enable firearms to fire automatically. The Account said that he had the chip. (Exhibits 28 and 31).

3. On July 23, 2023, in response to a picture of a firearm and its price, the Account inquired if the firearm was fully automatic, to which his correspondent said it was semi-automatic. (Exhibits 29 and 30).

4. On June 1, 2023, the Account sent a screenshot of an Instagram account posting about the murder of an urban recording artist, Pacho. The Account sent a subsequent audio message urging

being armed at all times and visibly carrying large-capacity magazines and rifles. (Exhibits 43, 44, and 34-6)

5. On May 7, 2022, the Account received a photo of a firearm, the number 2,200, and a message referring to two magazines with a forty-round capacity. The Account replied, indicating he would let others know that the firearm is available for sale. (Exhibits 45 and 46).

6. On September 20, 2023, a contact sent photos of multiple firearms and magazines to the Account. The Account responded, asking first about the price of two of the firearms, and later if the two weapons could be purchased together. (Exhibits 47, 48, 34-7, and 34-8).

7. Two days later, the Account asked the contact for the availability and price of a Glock 19, noting that the prospective buyer for the previous two firearms was now ignoring him. (Exhibits 34-9 and 34-10).

8. Finally, on September 25, 2023, the Account received a photo of a long firearm and magazine, to which the Account replied asking for its price. (Exhibits 47, 49, and 34-11).

In addition to testifying about these messages, SA Colón stated that approximately five months had elapsed between October 31, 2023, the date of the charged offense, and the filing of the *Complaint*. While Mr. Couvertier was being prosecuted in

Commonwealth Court, he was released on conditions of bail. SA Colón was not aware of any violations of these conditions.

### B. Testimony of SA Villanueva

SA Villanueva twice attempted to interview Mr. Couvertier. On the first occasion, October 31, 2023, Defendant invoked his *Miranda* rights and an interview was not conducted. On April 1, 2024, Mr. Couvertier waived his *Miranda* rights and stated that he had run away from the scene of the red Jeep on October 31, 2023, because everybody else had run as well. He also said that he was in a hookah lounge at the time of the murder of the PRPB officer in the Sabana Abajo PHP. On this occasion, Defendant spoke for approximately twenty to twenty-five minutes. The interview was not recorded.

SA Villanueva reviewed Mr. Couvertier's cell phone extraction and testified about attribution of the phone and its contents to Defendant. In one chat, Defendant provided his full name and date of birth. In other messages, he was also referred to by and responded to nicknames such as "Tata" and "Maike." Maike is Defendant's Instagram handle, and another co-defendant referred to Mr. Couvertier as Maike during an interview. SA Villanueva also watched a selfie-style video in which Defendant records himself and speaks. Finally, SA Villanueva testified that he had listened to the audio messages presented in the initial detention hearing

Case 3:24-cr-00124-RAM   Document 91   Filed 04/24/24   Page 9 of 18

Criminal No. 24-124-4 (RAM)                                                    9

and the *de novo* hearing, and that the voice on the messages sounded like Mr. Couvertier's voice.

Lastly, SA Villanueva also conceded that there was no mention of Defendant's flight on the night of October 31, 2023, in the affidavit that SA Villanueva submitted to support the *Complaint*.

### C. Testimony of TFO Maysonet

TFO Maysonet is a forensic analyst assigned to the HIS forensic laboratory. He reviewed a Cellebrite report documenting the extraction from Mr. Couvertier's phone for the first time on April 11, 2024. The report provides additional attribution evidence that the phone belongs to Defendant, such as the fact that it is linked to social media, Gmail, and Apple ID accounts bearing Mr. Couvertier's name or usernames. (Exhibits 51 and 52). Additionally, the phone was linked to four different SIM cards. (Exhibit 52). Finally, TFO Maysonet testified that he had reviewed three videos and their file paths, and that the file paths indicate the videos were taken using Mr. Couvertier's phone.

### D. Testimony of Ms. Rivera

Ms. Rivera is a former resident of the Sabana Abajo PHP. She first met Mr. Couvertier five or six years ago when he helped her move into the PHP. Later, Defendant assisted Ms. Rivera with other errands. She often saw him around the Sabana Abajo PHP, where his

mother resides, and believes that he neither travels very much nor is a danger to the community.

### III. LEGAL STANDARD

#### A. Standard of review for a detention or release order

A district court reviews a magistrate judge's order of detention or release under a de novo standard and "need not defer to the magistrate judge's findings or give specific reasons for rejecting them." United States v. Cidraz-Santiago, 18 F. Supp. 3d 124, 126 (D.P.R. 2014) (citations omitted). A district court may also "take additional evidence or conduct a new evidentiary hearing" when "the defendant has placed relevant facts at issue." Id.

#### B. The Bail Reform Act

Pursuant to the Bail Reform Act of 1984, a judicial officer must determine whether a person charged with an offense shall be detained or released pending trial. *See* 18 U.S.C. § 3142(a). Section 3142(e) of the Bail Reform Act provides that if, after conducting a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." Id. § 3142(e).

Criminal No. 24-124-4 (RAM)                                             11

A statutory presumption in favor of detention does not apply to this case. *See* United States v. Berríos-Aquino, 2022 WL 17075919, at *2 (D.P.R. 2022) (noting that the offense of possession of a machine gun is not listed in sections 3142(e)(2) or (3) of the Bail Reform Act). However, the Bail Reform Act authorizes pretrial detention in cases that involve a felony that involves the possession or use of a firearm or any other dangerous weapon. *See* id.; 18 U.S.C. § 3142(f)(1)(E). Detention is also authorized in cases where there is a serious risk that the defendant may flee. *See* id.; 18 U.S.C. § 3142(f)(2)(A).

    i.   Standard of proof

The standard of proof for detention on the grounds of dangerousness is clear and convincing evidence. 18 U.S.C. § 3142(f). Clear and convincing evidence is "more than preponderance of the evidence but less than beyond a reasonable doubt." United States v. Acevedo-Ramos, 600 F. Supp. 501, 509 (D.P.R. 1984) (citations omitted), *aff'd*, 744 F.2d 203 (1st Cir. 1985) (Breyer, J.). This standard requires "a high degree of certainty that the information presented supports the conclusion of dangerousness or risk to the obstruction of justice." Id. On the other hand, the standard of proof for detention on the grounds of risk of flight is preponderance of the evidence. United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991).

    ii. <u>Factors the Court must consider</u>

  To determine whether there are conditions of release that assure a defendant's appearance and the safety of the community, judicial officers must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's personal history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

## IV. DISCUSSION

  After considering the proffers of counsel, the evidence presented, the arguments of the parties, the Pretrial Services Report, and the recording of the initial detention hearing, the Court finds that the Government has not proven by the relevant standards that no conditions of release could reasonably assure the safety of the community and Defendant's appearance as required.

**A. The nature and circumstances of the offense charged**

  As discussed above, Mr. Couvertier was charged with illegal possession of a machine gun, aiding and abetting. (Docket No. 19). This is a serious offense. *See* <u>Berríos-Aquino</u>, 2022 WL 17075919, at *2; <u>United States v. Diaz-Collazo</u>, 2018 WL 377277, at *2 (D.P.R. 2018). If convicted, Defendant faces up to ten years' imprisonment. *See* 18 U.S.C. § 924(a)(2). Moreover, the Government notes that the

machine gun at issue was found in the center console of a vehicle that would have presumably been driven on a public street. This circumstance of the offense also favors detention. *See* Diaz-Collazo, 2018 WL 377277, at *2 (noting that the defendant possessed a machine gun in a public area); United States v. Mieses-Casiano, 161 F. Supp. 3d 166, 169 (D.P.R. 2016) (ordering detention of defendant who carried machine gun on public sidewalk, ran from the police, and tossed firearm while fleeing).

There is some dispute as to whether the Defendant fled from PRPB officers just prior to his October 31, 2023 arrest. The Government presented evidence that at least one PRPB officer conveyed to SA Colón that Mr. Couvertier ran, and that he told SA Villanueva in an interview that he fled as well. However, Mr. Couvertier's attorney cross-examined both witnesses as to why the *Complaint* had not included any reference to said flight, even though it had detailed how Mr. Isaac led a PRPB officer on a foot chase. It is beyond cavil that judges may consider sufficiently reliable hearsay evidence in making detention determinations. *See* Acevedo-Ramos, 755 F.2d at 208. In this case, the two witnesses corroborated each other's testimony at the *de novo* hearing. Additionally, the standard to establish a risk of flight is low: a preponderance of the evidence. Thus, the evidence presented as

to whether Mr. Couvertier ran from authorities at the time of his arrest weighs in favor of detention based on his risk of flight.

**B. The weight of the evidence against Defendant**

The Government presented a bevy of evidence throughout the *de novo* hearing, including photos and videos of the Defendant holding various firearms and group chat messages discussing gun sales. As the Government noted in its argument, however, the bulk of their presentation constituted evidence that, pursuant to Fed. R. Evid. 404(b), related to **other** crimes, wrongs, or acts separate from the offense charged in the indictment. *But see* Berríos-Aquino, 2022 WL 17075919, at *2-*3 (considering videos of defendant shooting a machine gun on other occasions in evaluating the weight of the evidence).

As related to the events of October 31, 2023, the weight of evidence for bail purposes derives from the testimony of SAs Colón and Villanueva, who spoke to PRPB officers present before and during Mr. Couvertier's arrest but who were not present at the scene themselves. The Court also notes that the federal Grand Jury has found probable cause by returning a true bill against the four co-defendants. Thus far, there is no evidence presented before the Court that is "inconsistent with a finding of guilt." Diaz-Collazo, 2018 WL 377277, at *2 (citing United States v. Gray, 529 F. Supp.

2d 177, 181 (D. Mass. 2007)). This factor then, tilts the needle slightly in favor of detention.

Regardless of the import or weight of the evidence proffered by the Government, the Court is not concerned with Mr. Couvertier's guilt or innocence at this stage. *See* 18 U.S.C. § 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence."). The Court's task is to assess whether there is a set of conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c). The Court agrees with the Magistrate Judge that such conditions exist.

**C. Defendant's personal history and characteristics**

Per the Pretrial Services Report, Mr. Couvertier considers himself a lifelong resident of the Sabana Abajo PHP. He does not have a passport, has never traveled outside of the United States, and only speaks Spanish. He has been in a ten-year relationship with another resident of the PHP, with whom he has two young children. During the first hearing date, Mr. Couvertier's partner came to support him, and other members of his family and community joined her on the second hearing date. Although Defendant has no record of steady employment, he also has no verified criminal history outside of the instant case. Furthermore, his attorney

presented a letter at the *de novo* hearing indicating that Mr. Couvertier has secured a job since his most recent federal arrest. Together, these factors strongly indicate that Defendant is unlikely to be a risk of flight, and they favor release. *See* Mieses-Casiano, 161 F. Supp. 3d at 169 (finding that characteristics such as lifelong residency in Puerto Rico, lack of passport, fluency only in Spanish, and dearth of travel outside of United States favored release).

### D. **The nature and seriousness of the danger to any person or the community that would be posed by Defendant's release**

Mr. Couvertier lacks a firearms license, although there are plenty of photos and videos showing him carrying and discharging firearms—including what appear to be automatic weapons—without authorization in public places. He has also smoked marijuana occasionally, including just a few days prior to his federal arrest. These factors suggest that Defendant poses a danger to the community. *See* Diaz-Collazo, 2018 WL 377277, at *2 (regarding defendant's possession of marijuana at the same time he was in possession of a loaded firearm).

Even more troubling is the evidence presented by the Government that an account associated with the Defendant's phone number has engaged in numerous discussions regarding the sale of firearms, including automatic ones. These conversations support

the notion that "defendant's conduct may be very well encouraging unlawful possession of" firearms, including machine guns. Berríos-Aquino, 2022 WL 17075919, at *4 (nonetheless granting release under conditions). Defendant was not merely illegally carrying firearms. He also brokered sales of these dangerous weapons to unknown persons with unknown motives. *See* id. Such actions can pose serious danger to the community.

However, there is no evidence that Mr. Couvertier violated any conditions of release during the approximately five months that his Commonwealth Court charges were pending. He appeared before this Court twice for the *de novo* hearing. The Government presents no evidence that he handled or sold firearms since his first arrest on October 31, 2023, and the vast majority of the Government's evidence predates that event. Although the Court is concerned by the evidence submitted at the *de novo* hearing, "the safety of the community can be reasonably assured without being absolutely guaranteed." United States v. Tortora, 922 F.2d 880, 884 (1st Cir. 1990). The Court has considered the conditions imposed by Magistrate Judge López' order of release at Docket No. 51 and notes that, among other requirements, the Defendant must reside outside the Sabana Abajo PHP, remain under home detention, and wear an electronic monitoring device. Together, these and the other conditions of release can reasonably assure public safety.

## V.  CONCLUSION

For the foregoing reasons, the Government's *Motion for Stay of Bail Order and Request for a De Novo Bail Hearing* at Docket No. 32 is **DENIED**. The Defendant Eli Yaniel Couvertier-Pollock is to remain on bail subject to the conditions specified in the order of release at Docket No. 51.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 24th day of April 2024.

s/Raúl M. Arias-Marxuach_____<br>
UNITED STATES DISTRICT JUDGE